IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARVIN GLENN HOLLIS,

      Plaintiff,                        No. CIV S-09-1627 JAM CKD P

   vs.

A. GORBY, et al.,

      Defendants.                FINDINGS AND RECOMMENDATIONS

         Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights. The eight remaining defendants are either current or former employees of the California Department of Corrections and Rehabilitation (CDCR) at High Desert State Prison (HDSP). In orders dated November 24, 2009, and March 31, 2010, the magistrate judge previously assigned to this case found that plaintiff's complaint states claims upon which relief can be granted under the Eighth Amendment against defendants Gorby, Tovar Sr., Wright,

/////
/////
/////
/////
/////

1

1  Lowry, Crawford, McGuire, Barton and Tovar Jr.[1]  All defendants now move for summary
2  judgment.[2]
3  I.  Plaintiff's Allegations[3]
4        On the morning of December 12, 2008, defendant Tovar Sr. escorted plaintiff
5  following a meeting with staff concerning a dental issue.  While being escorted, plaintiff's hand
6  and arms were restrained with handcuffs attached to a waist chain and he wore ankle restraints.
7  At some point, plaintiff was placed in a holding cage in the administrative segregation building,
8  "Z Unit."  The door to the cage was left open.
9        Shortly thereafter, defendant Tovar Sr. entered the cage and grabbed plaintiff by
10 the waist restraints.  Then, plaintiff asked Tovar Sr. to close the door to the cage.  It is not clear
11 why he made this request.  In response to plaintiff's request, defendant Gorby told plaintiff to
12 "shut his fucking mouth" and "you don't run shit around here."  Plaintiff told Gorby and Tovar
13 Sr. "I have a 1st Amendment right to freedom of speech" and again requested the Tovar Sr. and
14 Gorby close the door to the holding cage.
15       At that point, Gorby "snatched" plaintiff out of the cage and violently threw him
16 to the ground.  Gorby jumped on top of plaintiff and drove his knee into plaintiff's back as Tovar
17 /////

---

[1] In her declaration attached to defendants' motion for summary judgment, defendant Barton indicates she recently changed her last name to Hilton. The court will continue to refer to her as Barton, however, to minimize confusion.

[2] With their motion for summary judgment, defendants filed a request that the court take judicial notice of plaintiff's complaint.  The court does not take judicial notice of documents, such as pleadings.  It takes judicial notice of facts (e.g. if for some reason it was a matter of consequence in this action when plaintiff filed his complaint, the court might take judicial notice of the fact that it was received by the court on June 11, 2009). Fed. R. Evid. 201(b). Defendants' request is denied.  The court notes this is at least the seventh improper request for judicial notice filed in this action by counsel for defendants.  See docket entries 39, 43, 48, 49, 59 and 70).

[3] The court points only to those allegations relevant to plaintiff's Eighth Amendment claims against the remaining defendants.  Plaintiff's complaint is signed under the penalty of perjury.

1  Sr. held plaintiff down.  Plaintiff suffered extreme pain as a result of the actions of Gorby and
2  Tovar Sr.
3  While plaintiff was on the ground, Gorby told plaintiff he is "tired of [plaintiff's]
4  shit."  The control officer in "Z Unit" then activated his alarm causing several correctional
5  officers to respond.  Eventually, plaintiff was lifted from the ground and placed back into the
6  holding cage.  After he was in the cage, plaintiff asserted he would file a complaint against the
7  officers present.  Defendant Wright indicated he did not care.
8  Plaintiff again requested that the door to the holding cage be closed.  In response
9  to plaintiff's request, defendants Gorby and Wright again pulled plaintiff out of the cage and
10 threw him to the ground injuring plaintiff's right elbow.  Defendants Gorby, Tovar Sr., Wright,
11 Lowry and Crawford then "piled on" plaintiff with violent force and remained on top of plaintiff
12 for ten minutes while plaintiff was in extreme pain.  Defendants McGuire, Barton and Tovar Jr.
13 witnessed what happened but did nothing to stop the use of force by the other defendants.
14 After these events, plaintiff was cleared to return to his cell by medical staff and
15 was escorted back to his cell by defendant Lowry.  During the escort, Lowry twisted plaintiff's
16 right wrist causing pain.
17 Plaintiff asserts defendants did not like plaintiff because of his use of the inmate
18 appeal process, although he fails to point to any grievances filed by him where any defendant was
19 explicitly or implicitly targeted in the grievance.

II. Legal Standards

    A.    Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the

1           pleadings, depositions, answers to interrogatories, and admissions
           on file, together with the affidavits, if any," which it believes
2           demonstrate the absence of a genuine issue of material fact.

3 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the

4 nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

5 judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

6 to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered,

7 after adequate time for discovery and upon motion, against a party who fails to make a showing

8 sufficient to establish the existence of an element essential to that party's case, and on which that

9 party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof

10 concerning an essential element of the nonmoving party's case necessarily renders all other facts

11 immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as

12 whatever is before the district court demonstrates that the standard for entry of summary

13 judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

14         If the moving party meets its initial responsibility, the burden then shifts to the

15 opposing party to establish that a genuine issue as to any material fact actually does exist. See

16 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to

17 establish the existence of this factual dispute, the opposing party may not rely upon the

18 allegations or denials of its pleadings but is required to tender evidence of specific facts in the

19 form of affidavits, and/or admissible discovery material, in support of its contention that the

20 dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

21 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

22 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

23 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

24 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

25 return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

26 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On March 16, 2010, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc) and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

////
////
////

B. <u>Excessive Force</u>

In order to establish excessive force in violation of the Eighth Amendment, plaintiff must show that he has been subjected to the wanton and unnecessary infliction of pain. <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986). The Ninth Circuit has relied on the following factors in determining whether an officer's application of force was undertaken in a good faith or maliciously and sadistically to cause harm: 1) the extent of the injury suffered by an inmate; 2) the need for application of force; 3) the relationship between that need and the amount of force used; 4) the threat reasonably perceived by the responsible officials; and 5) any efforts made to temper the severity of a forceful response. <u>Martinez v. Stanford</u>, 323 F.3d 1178, 1184 (9th Cir. 2003).

Also, prison officials can violate a prisoner's Eighth Amendment rights by failing to intervene to prevent other officials from violating the prisoner's Eighth Amendment rights. <u>Robbins v. Meecham</u>, 60 F.3d 1436, 1442 (9th Cir. 1995).

III. <u>Analysis</u>

A. <u>Defendants' Version of Events</u>

Defendants' version of the events of December 12, 2008 differs from plaintiff's in the following respects:

1. Officer Tovar Sr. indicates that after he ordered plaintiff to enter the "Z Unit" holding cage, he told plaintiff to face the back of the cell as a safety precaution to decrease the chances of being assaulted while he locked the cell door. Plaintiff refused to face the back of the cell. Plaintiff also refused a second order to face the back of the cell and then stepped toward Tovar Sr. Tovar Sr. grabbed plaintiff by his waist chains and started to turn him towards the back of the cell. Plaintiff resisted by refusing to move his feet.

2. At that point, according to Tovar Sr., Officer Gorby stepped into the holding cell to assist Tovar Sr. Gorby used his arm and the weight of his body to turn plaintiff until he was facing the back of the holding cage. Gorby ordered plaintiff to remain facing the back of the

cell, released plaintiff, and stepped back.  Then, plaintiff began to turn around and face Gorby.

3. Gorby then took hold of plaintiff's waist chain and the back of his jumpsuit and took him to the floor into the prone position.

4. Next, according to defendant Wright, Wright responded to the scene after hearing sounds of a scuffle.  Wright saw plaintiff on his stomach being restrained by defendants Gorby and Lowry and resisting by trying to lift himself from the ground.  Wright placed leg restraints on plaintiff at that point.  Wright then assisted Gorby with bringing plaintiff to his feet.  They again faced plaintiff toward the rear of the holding cage and released their hold on him.

5. According to both Tovar Sr. and Wright, Wright then ordered plaintiff to stay facing the back of the holding cell until the door to the cell was closed and locked.  Plaintiff was warned that if he failed to comply, force would be used to gain compliance.

6. Tovar Sr. and Wright assert that plaintiff immediately spun around, so Wright took hold of the back of plaintiff's jumpsuit and took him to the ground a second time.  Wright, Gorby, and Lowry restrained plaintiff on the ground.  Plaintiff resisted while he was on the ground.  According to Wright, plaintiff then said something to the effect of, "I've been dying to get you Wright, I knew if I turned on you, you would take me down, and now I got your ass.  I may not get you now, but I will see you in court in a couple of years."  Wright sprained his thumb during this incident.

7. After being medically cleared, plaintiff was returned to his cell.

8. Defendant Barton asserts that while she was working in "Z-Unit" on December 12, 2008, she did not witness the events described above as she was out in the prison yard occupied with another inmate in restraints.

B.    Plaintiff's Version of Events

In his declaration attached to his opposition, plaintiff reiterates facts described in his complaint including the fact that defendant Barton was present for all of the events which

\\\\

7

1 occurred after plaintiff was initially placed in the "Z-Unit" holding cell.[4] He also asserts, among
2 other things:
3    1. He never disobeyed any orders from staff on December 12, 2008, nor was he
4 hostile.
5    2. No defendant ever ordered him to face the back of the "Z-Unit" holding cage.
6    3. He did not "step toward" defendant Tovar Sr.
7    4. He did not "turn around" and "face" defendant Gorby.
8    5. He did not "spin" to his right to face defendant Wright.
9    6. He did not try to push himself up while he was on the ground.
10   7. He did not tell defendant Wright, "I've been dying to get you Wright, I knew if
11 I turned on you, you would take me down, and now I got your ass. I may not get you now, but I
12 will see you in court in a couple of years."
13   8. He faced the back of the holding cell while there.

C.   Discussion

Essentially, defendants assert that they are entitled to summary judgment because there is no genuine issue of material fact as to whether the amount of force they used was reasonable considering plaintiff disobeyed orders and then resisted when force was used. But, under plaintiff's version of the events, it is not clear that any force was necessary as he asserts that force was used not because he refused to comply with their orders or because he resisted, but in response to his requests that the door to the holding cell be closed. Defendants fail to point to anything suggesting that such a request would warrant forcibly removing plaintiff from his feet

---

[4] Plaintiff's declaration begins at page 126 as the document identified on the court's docket as his opposition. Defendants assert the court should not consider plaintiff's declaration because it is not signed under the penalty of perjury. See page 130. On July 7, 2011, plaintiff submitted the same declaration signed under the penalty of perjury. The court considers plaintiff's declaration as defendants did address the contents of the declaration in their reply to plaintiff's opposition and have not objected to plaintiff's request that the court consider the declaration now that it is signed under the penalty of perjury.

and taking him to the ground. Construing the facts in the light most favorable to plaintiff, as the court must, there is at least a genuine issue of material fact as to whether the force used by defendants Gorby, Tovar Sr., Wright, Lowry and Crawford was excessive.

Defendants McGuire, Barton and Tovar Jr. are also not entitled to summary judgment. Plaintiff asserts these defendants witnessed the acts of the other defendants and failed to intervene. There is at least a genuine issue of material fact as to whether this is true.

Defendants argue they are entitled to qualified immunity with respect to plaintiff's claims. Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether a governmental officer is immune from suit based on the doctrine of qualified immunity, the court must answer two questions. The first is whether the officer's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). The second is "whether the right was clearly established," id., and it is plaintiff's burden to show that it was, Alston v. Reed, 663 F.3d 1094, 1098 (9th Cir. 2011). A negative answer to either question means immunity from suit is appropriate. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

As demonstrated above, plaintiff's right to be free from excessive force is clearly established and there is at least a genuine issue of material fact as to whether that right was violated. It is also clearly established, as indicated above, that prison officials can be held liable for failing to intervene to prevent a violation of Eighth Amendment rights and there is at least a genuine issue of material fact as to whether defendants McGuire, Barton and Tovar Jr. failed to intervene. Defendants are not immune from suit under the doctrine of "qualified immunity."

In accordance with the above, IT IS HEREBY RECOMMENDED that defendants' April 29, 2011 motion for summary judgment be denied.

\\\\

1 These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 30, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
holl1627.57